O

# United States District Court
# Central District of California

| | |
|---|---|
| EDELBROCK LLC,<br><br>                              Plaintiff,<br><br>        v.<br><br>GENESIS GROUP INTERNATIONAL<br>(USA), INC.; and DOES 1–10, inclusive,<br><br>                              Defendants. | Case No. 2:15-CV-01024-ODW(Ex)<br><br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR DEFAULT<br>JUDGMENT [21]** |

## I.   INTRODUCTION

Plaintiff Edelbrock LLC ("Edelbrock") brought suit against Defendant Genesis Group International (USA), Inc. ("Genesis") seeking Declaratory Relief after Genesis sent Edelbrock a letter accusing it of infringing U.S. Patent No. 7,694,667 B2 ("the '667 Patent").   Edelbrock responded with this suit asserting its superchargers for automobiles did not infringe the '667 Patent as Genesis had claimed.   Genesis was served and subsequently failed to plead or otherwise defend this action, leading to Edelbrock moving for entry of default and default being entered by the Clerk on March 20, 2015.  Edelbrock now moves for default judgment against Genesis.  For the reasons discussed below, the Court **GRANTS** Edelbrock's Motion for Default

1    Judgment (ECF No. 21) and enters a declaratory judgment holding that Edelbrock's
2    superchargers do not infringe the '667 Patent.[1]

3                            ## II.   FACTUAL BACKGROUND

4          The technology at issue in this case relates to superchargers for an internal
5    combustion engine.  Superchargers are air compressors that increase the pressure or
6    density of air supplied to an internal combustion engine.  By giving the engine more
7    air with each intake cycle, it burns more fuel and performs more work, thereby
8    increasing the power of the engine.  The two main types of superchargers are
9    distinguished by the method they use to deliver air to the engine.  The first type,
10   utilizing positive displacement pumps, delivers nearly fixed volumes of air per
11   revolution at any speed.  The second type, utilizing dynamic compressors, do not
12   deliver pressure until the engine passes a given speed threshold, at which time the
13   pressure delivered increases along with engine speed.  The products at issues in this
14   case are both positive displacement pumps, delivering constant fixed-volumes of air to
15   the engine.

16         The '667 Patent purports to claim an apparatus for a vehicle comprising a
17   compressor device and manifold for connection to air inlets of an engine, wherein the
18   manifold has an entry end chamber and the compressor device is located at least
19   partially within the chamber.  '667 Patent at col. 7, ll. 28–32.  The entry end chamber,
20   as described in independent claims 1 and 30, also comprises a discharge diffuser.  *Id.*
21   The supercharger was designed to be fitted to an engine and remain below the hood of
22   a vehicle, as opposed to prior superchargers that were located on top of the engine
23   and, as a result, protruded through the hood.  *Id.* at col. 1, ll. 43–48.  The rotors in the
24   '667 Patent's supercharger are designed to compress the air as it moves through them
25   and into the entry end chamber.  *Id.* at col. 6, ll. 49–53.  The rotors do so by working
26   in male and female rotor design pairs where the male rotor maintains the same

27

28   [1] After carefully considering the papers filed in support of the Motion, the Court deems the matter
     appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

dimensions along its length and the female rotor gradually becomes larger in order to compress the air between them before it exits the device.

The purported key distinction of this apparatus from the prior art, and what the prior art shows as obvious, is the particular design of the discharge diffuser. The '667 Patent describes the design of the diffuser as comprising a gradual, or at least somewhat continuous or streamlined, increase of the cross-sectional area in order to allow the kinetic energy to be effectively utilized. *Id.* at col. 8, ll. 44–49; (ECF No. 21, Attach. 7 Decl. of Robert Simons ["Simons Decl."], Ex. G.). While the prior art had described discharge diffusers before, never had they contained smooth and gradual increases in cross-sectional area. (Simons Decl., Ex. H.) Rather, as the applicant pointed out in his request for continued examination, the prior art comprised diffusers containing gradual decreases in cross-sectional area, and took no attempt to capitalize on the kinetic energy as did the '667 Patent's diffuser. (*Id.*) A preferred embodiment of the invention installed on top of a V-type engine block is described in Figure 3, below:



FIGURE 3

Edelbrock manufactures and sells superchargers that utilize a roots blower system, simplistically related to a fan, which keeps a 1:1 ratio of air on both sides of the fan.   (Simons Decl. ¶ 21.)   The rotors' dimensions stay static throughout the device and so no compression of the air takes place.   (*Id.*)   Edelbrock's supercharger instead creates pressure by throttling the output flow of air while maintaining the same intake, thus creating backpressure in the system since the air is unable to flow back through the rotors.   (*Id.*)   After the air exits the roots blower, it enters a discontinuous chamber that gradually decreases in cross-sectional area before it passes into the runner passage and is delivered to the engine.   (*Id.* ¶ 23.)   One configuration of the Edelbrock supercharger is shown in the figure below:



(*Id.*)

Edelbrock received a letter from Genesis demanding that Edelbrock cease and desist in its manufacture and sale of these superchargers, alleging that they infringed the '667 Patent.   (ECF No.1, Compl. ¶ 24.)   Edelbrock filed this suit on February 11, 2015, seeking declaratory relief in a finding from the Court that its supercharger, as

described, does not infringe the '667 Patent.  (*Id.* ¶¶ 26–29.)  After receiving no answer or pleadings from Genesis, Edelbrock moved to enter default against Genesis on March 19, 2015.  (ECF No. 15.)  The Clerk entered default on March 20, 2015 (ECF No. 16) and Edelbrock moved for default judgment on March 30, 2015.  (ECF No. 21.)[2]  Edelbrock's Motion is now before the Court for consideration.

### III.    LEGAL STANDARD

FRCP 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a).  Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors, including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The federal Declaratory Judgment Act provides that district courts "may declare

---

[2] Upon the Court's request, Edelbrock provided supplemental briefing regarding its original Motion for Default Judgment (ECF No. 17).  (ECF Nos. 20, 21.)

the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed. *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted).

## IV.   DISCUSSION

### A.   Service

The Court finds that service of the summons and complaint upon Defendants was proper, as Genesis was served both through an appointed agent and received substituted service through mailing to their place of business. (Default 4–5.) Additionally, Edelbrock's counsel spoke to the president of Genesis, Andrew Mueller, personally over the telephone and discussed this action. (*Id.*) All other requirements of Local Rule 55-1 have been met and are not in controversy.

### B.   *Eitel* Factors

The Court finds that the *Eitel* factors weigh in favor of default judgment. The Court will discuss each factor in turn.

#### 1.   Edelbrock Would Suffer Prejudice

If default judgment were denied, Edelbrock would be left with the looming risk of Genesis following through on their threat to sue for infringement of the '667 Patent, as described in the letter Genesis sent to Edelbrock. (Compl. ¶ 24.) Furthermore, prolonging Edelbrock's uncertainty over the potential of such suits could result in various losses for the company, in addition to needing to set aside funds for the potential infringement suit. Edelbrock's purpose in seeking declaratory relief is to avoid just such a scenario, and as such, this factor weighs in favor of granting default

judgment.

### 2. Edelbrock Has Brought Meritorious Claims

Edelbrock's chance of success on the merits of their claim is exceedingly high. Edelbrock contends that the superchargers it manufactures do not infringe the '667 Patent owned by Genesis and wish for the Court to grant declaratory relief along those same lines. Edelbrock has provided the patent in question as well as details regarding the prosecution history of the '667 Patent, containing the details of the process Genesis went through in securing that patent after being denied on three occasions for being obvious or anticipated by prior art.

### a. Non-infringement of the '667 Patent

To determine whether Edelbrock infringed upon the '667 Patent with its superchargers requires a two-step analysis: first, the claim must be construed to determine its scope and meaning, and; second, the properly construed claim must then be compared to the device or process said to be infringing. *Gen. Am. Transp. Corp. v. Cyro-Trans, Inc.*, 93 F.3d 766, 769 (Fed. Cir. 1996). In order to define the meaning of the claims, courts should consider the claim language, the specification, and the prosecution history. *Id.*

### i. Claim Construction

Edelbrock directs the Court's attention to the two independent claims set forth in the '667 Patent, Claims 1 and 30. (Default 6–7.) Claim 1 provides:

> An apparatus for a vehicle **comprising a compressor and manifold** for connection to air inlets of an engine, wherein the manifold has an entry end chamber, the compress device is located at least partially within the chamber, and wherein **the entry end chamber comprises a discharge diffuser**.

'667 Patent at col. 7, ll. 28–32 (emphasis added). Claims 2 through 29 are dependent claims further limiting Claim 1. *Id.* at col. 7, ll. 33–66, col. 8, ll. 1–49.

Claim 30 provides:

A vehicle comprising a **compressor apparatus** comprising **a compressor device** and manifold for connection to air inlets of an engine of the vehicle, wherein the manifold has an entry end chamber, the compressor device is located at least partially within the chamber, **and** wherein the entry end chamber comprises a **discharge diffuser**.

*Id.* at col. 8, ll. 50–55 (emphasis added).  Claims 31 through 33 are dependent claims incorporating the requirements of a compressor and discharge diffuser stated in Claim 30.  *Id.* at col. 8, ll. 56–65.

The prosecution history of the '667 Patent shows what aspects of the invention the USPTO found to be essential to allow Genesis's supercharger to be patented. After several rejections and amendments to the patent's claims, the USPTO finally granted the '667 Patent because "the prior art fails to disclose or render[] obvious the claimed combination . . . including 'the compressor device being located at least partially within the chamber, and the entry end chamber comprising a discharge diffuser.'"  (Default 7–8.)  The prosecution history of the '667 Patent shows the Court that the existence of both a compressor device being located at least partially within the chamber, and an entry end chamber comprising a discharge diffuser are essential aspects of the '667 Patent.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002) ("Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process" in order to determine the final scope of those claims).

Furthermore, of crucial importance to the USPTO was the applicant's definition of a discharge diffuser being an area that gradually increases in cross-sectional area in a smooth and continuous way.  (Simons Decl., Ex. G.)  This aspect of the '667 Patent is deemed important because it was only after this additional description and distinction from the prior art that the USPTO finally allowed the claims and granted the '667 Patent.  (*Id.*, Ex. H.)  Before that added definition, the USPTO had rejected

the '667 Patent on three other occasions as being precluded by prior art and/or obvious in light of the prior art.  (*Id.*, Exs. B–H.)  *See Festo*, 535 U.S. at 735 (holding amendments that narrow the subject matter and scope of a patent to avoid prior art or obviousness will invoke the doctrine of estoppel); *see also Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577–1578 (Fed. Cir. 1997) ("Prosecution history estoppel . . . preclud[es] a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent.").

In light of the prosecution history, it is clear to the Court that having a discharge diffuser that fits the very specific definition given by the applicant for the '667 Patent is necessary to find infringement.  This finding is due to the repeated rejection of the '667 Patent by the USPTO for being anticipated by prior art until the additional definitions of the discharge diffuser were added to the patent application.  (Simons Decl., Exs. B–H.)

### ii.    Application of Claims to Device Accused of Infringement

Moving to the second step of the infringement analysis, the Court must compare the construed claims and scope of the '667 Patent to the device accused of infringing. *Gen. Am. Transp. Corp,* 93 F.3d at 769.  Edelbrock's Vice President of Engineering, Robert Simons, states that their superchargers lack both a compressor device and an entry end chamber comprising a discharge diffuser.  (Default 9; Simons Decl. ¶ 21.) The Edelbrock supercharger does not compress air inside of itself through the use of compressor rotors as required by the '667 Patent, rather it compresses air through the creation of a backpressure in the chamber by reducing the amount of air funneled into the engine.  (*Id.*)  Thus, compression does not take place within the supercharger itself, but rather in the outlet chambers that connect the supercharger to the intake of the vehicle's engine.  As a result, there is no compression device at least partially within the chamber, for there is no "device" that creates compression; only the reduction in the engine's intake creates pressure in the outlet chamber.

Additionally, the Edelbrock supercharger lacks a discharge diffuser as defined by the '667 Patent; once the air is passed through the roots blower it enters a discontinuous chamber that gradually decreases in cross-sectional area. (*Id.* ¶ 23.) As discussed above, the gradual smooth increase in cross-sectional area is a necessary element of the '667 Patent's discharge diffuser due to prosecution history estoppel. Such a gradual increase does not exist in Edelbrock's product, and therefore, Edelbrock's supercharger does not contain a discharge diffuser.  Because both of the essential aspects of the '667 Patent are absent from Edelbrock's product, Edelbrock cannot infringe the '667 Patent.  *See Gen. Am. Transp. Corp.*, 93 F.3d at 771 ("[T]here can be no infringement as a matter of law if a claim limitation is totally missing from the accused device.") (quoting *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991.); *Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986) ("Literal infringement requires that the accused device embody *every* element of the patent claim.") (emphasis added).

b.  Declaratory Judgment

Edelbrock has also shown that it is entitled to declaratory relief.  The two-part test utilized in determining whether such relief is appropriate is met.   First, Edelbrock's claims lay out a clear issue that, if resolved, would settle the legal relations between the parties.  Genesis's cease and desist letter was premised on the claim that Edelbrock had infringed the '667 Patent, issuing a declaratory judgment would put the claims presented in that letter to rest.  Second, it would terminate any future concern about Edelbrock being sued by Genesis for infringement of the '667 Patent, which gave rise to Edelbrock's current action.  Thus, Edelbrock has shown that it has brought meritorious claims for both the finding on non-infringement and the issuance of declaratory relief.

3.  Edelbrock's Complaint Was Sufficiently Plead

Edelbrock's complaint pleads for declaratory relief on the grounds that its

1    products do not infringe the '667 Patent owned by Genesis.  As explained in greater

2    detail above, the complaint and the allegations within were sufficiently pleaded and

3    form the basis for a claim on which Edelbrock may recover.  Thus, this factor weighs

4    in favor of default judgment.

5                   4.    The Amount at Stake Weighs in Favor of Default Judgment

6            Edelbrock has not sought any monetary damages from Genesis, rather they

7    have only sought declaratory relief holding that their supercharger does not infringe

8    the '667 Patent.  Therefore, this factor weighs in favor of granting default judgment.

9                   5.    There is No Possibility of Dispute as to Material Facts

10           As illustrated in the discussion of the second *Eitel* factor, Edelbrock sufficiently

11   alleged that their supercharger does not infringe the '667 Patent.  It is well established

12   that "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true,

13   except those relating to damages." *PepsiCo*, 238 F.Supp.2d at 1177.  Therefore,

14   because Genesis never responded to the complaint and introduced no evidence to

15   counter Edelbrock's claims, "no factual disputes exist that would preclude the entry of

16   default judgment." *Vogel v. Rite Aid Corp*, 992 F. Supp. 2d 998, 1013 (C.D. Cal.

17   2014).

18                  6.    There is Little Possibility Default was Due to Excusable Neglect

19           As discussed above, Edelbrock effectuated proper service under FRCP 4(e)(1)

20   by substituted service to Genesis's business address, in addition to serving an

21   authorized agent and speaking directly to Genesis's president via telephone call.

22   (Default 4–5.)  There is no evidence of excusable neglect at hand; Genesis sent a

23   demand letter to Edelbrock, Edelbrock then responded with the current suit and served

24   Genesis in numerous ways, even speaking directly to Genesis's president about the

25   suit.  *E.g.*, *Round Hill Cellars v. Lolonis Winery*, No. C-11-00757 JSW EDL, 2011

26   WL 6961333, at *5 (N.D. Cal. Dec. 9, 2011) *report and recommendation adopted*,

27   No. C 11-00757 JSW, 2012 WL 33247 (N.D. Cal. Jan. 6, 2012) (finding no excusable

28   neglect when upon receipt of a demand letter plaintiff promptly filed suit, sent a copy

of complaint to the defendant, and spoke via telephone with a representative of the defendant).   As a result, the Court finds this factor weighs in favor of default judgment.

       7.   <u>Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment</u>

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible."   *Eitel*, 782 F.2d at 1472.   However, where, as is the case here, the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible."   *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action").   Furthermore, "when a defendant . . . [knows] that he has been sued . . . [it is] the defendant who seeks to prevent an adjudication on the merits."   *Carol Gilbert, Inc. v. Haller*, 179 Cal. App. 4th 852, 865 (Cal. Ct. App. 2009).   Accordingly, the Court finds that this factor does not preclude default judgment.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Edelbrock's Motion for Default Judgment (ECF No. 21) and finds that Edelbrock's supercharger does not infringe upon the '667 Patent.   A separate judgment will issue.


**IT IS SO ORDERED.**


August 12, 2015


_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**